UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK

VICTOR CESAR BOTA,

Plaintiff,

-vs-

GREGORY O'CONNOR,
SOLARIS ENTERTAINMENT,
ESPN, INC.,
TIMOTHY DETTRO,
JENNA ANTHONY,
FABIO CESNIK,
30WEST MEDIA GROUP;

Defendants.

**VERIFIED COMPLAINT FOR COPYRIGHT INFRINGEMENT, FRAUD, CIVIL CONSPIRACY, AND DECLARATORY AND INJUNCTIVE RELIEF**

Index No. _____

Plaintiff Victor Cesar Bota ("Plaintiff"), appearing pro se, respectfully alleges the following based on personal knowledge, documents, and evidence in his possession:

<u>I. JURISDICTION AND VENUE</u>

1. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and § 1338(a), as this action arises under the Copyright Act of 1976, 17 U.S.C. § 101 et seq.

2. This Court also has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a), including claims for fraud, breach of contract, civil conspiracy, and civil RICO under 18 U.S.C. § 1962.

3. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(1) and (b)(2) because one or more defendants reside in this District and a substantial part of the events or omissions giving rise to the claims occurred in this District.

## II. THE PARTIES

4. Plaintiff Victor Cesar Bota is a writer, filmmaker, and artist residing at 65 N Fullerton Ave #21, Montclair, NJ 07042. He is the sole creator and copyright holder of the documentary entitled "The Gracies and the Birth of Vale Tudo" and all derivative materials developed over two decades.

5. Defendant Gregory O'Connor is an individual whose last known addresses have proven unreliable or were intentionally concealed. Plaintiff previously secured a court order under CPLR § 308(5) authorizing alternative service via email in a related state case, due to O'Connor's pattern of evasion and failure to maintain reliable contact information. Plaintiff intends to seek similar relief under Federal Rules of Civil Procedure 4(e)(1) and 4(f)(3) in this action, given O'Connor's ongoing efforts to avoid formal process. He is a producer affiliated with Solaris Entertainment and was formerly a collaborator of Plaintiff on the Gracie family documentary project. The plaintiff has previously attempted service upon O'Connor via multiple known email addresses, including gregoc@solarisentertainment.com, gconnors314@gmail.com, info@solarisentertainment.com, and gregsongs1@me.com. These methods were granted by state court under CPLR § 308(5) due to O'Connor's evasive behavior and lack of confirmed physical

residence. Plaintiff intends to seek a similar order for alternative service via Rule 4(e)(1) and Rule 4(f)(3) of the Federal Rules of Civil Procedure in this action.

6. Defendant Solaris Entertainment is a New York-based production company that collaborated with Gregory O'Connor and is now producing a project derived from Plaintiff's work without authorization.

7. Defendant ESPN, Inc. is a multinational sports media corporation with a principal office located at 147 Columbus Avenue, New York, NY 10023. ESPN is a wholly owned subsidiary of The Walt Disney Company.

8. Defendant Timothy Dettro is a former Vice President of ESPN and currently holds an executive role with The Walt Disney Company. At all relevant times, Dettro played a pivotal role in soliciting and helping develop the Plaintiff's documentary project for ESPN, disclosing the internal effort to remove the Plaintiff from his work.

9. Defendant Jenna Anthony is a representative of ESPN involved in requesting waivers and communicating with Gregory O'Connor to gain access to the Plaintiff's protected materials.

10. Defendant Fabio Cesnik is a Brazilian entertainment attorney who has represented the Plaintiff since at least 2007. Cesnik not only introduced Plaintiff to Gregory O'Connor but also played a central role in negotiating the initial agreements between Plaintiff and O'Connor, as well as in structuring proposed offers with Solaris Entertainment. Cesnik advised the Plaintiff throughout the discussions and ultimately recommended the signing of the waiver presented by ESPN, despite the conflict of interest that later emerged. Cesnik's subsequent refusal to act, citing his firm's representation of ESPN in Brazil, reveals a betrayal of fiduciary duty that materially enabled the misappropriation of the Plaintiff's intellectual property and allowed Defendants to exploit the Plaintiff's work while silencing his legal recourse.

11. Defendant 30West Media Group is a California-based entertainment advisory and investment firm with offices in New York. Upon information and belief, Micah Green, formerly of Creative Artists Agency (CAA), co-founded 30West Media Group with other CAA associates around the time Gregory O'Connor ceased communication with the Plaintiff. Despite prior involvement in negotiations via Fabio Cesnik and CAA's engagement with the Plaintiff's project, Micah and his affiliates proceeded to form 30West with billion-dollar funding and took over sales and distribution functions related to the stolen project. Additionally, Nick Lafferty, a talent agent affiliated with CAA, acted as the bridge between the Plaintiff and several of the Defendants. He directly handled communications and negotiations with Gregory O'Connor without including Plaintiff in critical discussions, despite acting under the trust Plaintiff placed in him based on standard industry protocols for talent agents. Lafferty's failure to keep Plaintiff informed, coupled with his close coordination with both Cesnik and 30West, suggests active knowledge of the effort to exclude Plaintiff from his project. His silence and disappearance from all correspondence, which coincided with Gregory's cessation of contact, further supports the inference of collusion and racketeering intent among the parties. Under California law, talent agents like Lafferty are bound by fiduciary obligations, including duties of loyalty, full disclosure, and avoidance of conflicts of interest, as outlined in California Civil Code § 2322. Plaintiff relied on these duties when entrusting Lafferty with access and involvement in the project. Lafferty's failure to disclose material facts, to include the Plaintiff in negotiations, and his eventual silence all represent a breach of those fiduciary duties. This breach not only violated Plaintiff's trust but materially assisted in the unauthorized transfer and commercialization of Plaintiff's work and property, bolstering the allegations of conspiracy and racketeering. Their immediate and coordinated blocking of Plaintiff's communications, despite having no prior direct contact, demonstrates actual knowledge of Plaintiff's identity, intent to obstruct legal

recourse, and active participation in a broader racketeering enterprise. This conduct further evidences malice, conspiracy, and the continued execution of a fraudulent scheme designed to exploit Plaintiff's work and property while excluding him entirely commercially. At all relevant times, 30West acted as a sales agent and advisor in the exploitation of the project based on Plaintiff's work and property while excluding him. When Plaintiff attempted to notify them of the unlawful conduct, 30West actively blocked communication, refusing to respond to cease-and-desist warnings and knowingly continuing to market and profit from stolen intellectual property.

## III. INTRODUCTION

12. This is a true David and Goliath story. Plaintiff, an independent filmmaker, spent over 20 years researching, filming, restoring, and compiling exclusive content on the Gracie family—the founders of Brazilian Jiu-Jitsu and the UFC, with the full cooperation of 21 family members, including 7 deceased members whose estates were given exclusive rights to the Plaintiff to create a landmark documentary and develop a long-form series proposal.

13. Defendants, led by former ESPN Vice President Timothy Dettro, orchestrated a scheme to solicit Plaintiff's copyrighted and registered materials under false pretenses. Gregory O'Connor and Solaris Entertainment repeatedly failed to produce under expired agreements with the Plaintiff and instead used their access to the Plaintiff's content to repackage it as their own.

14. Despite initially rejecting the project, ESPN later announced a Gracie family documentary—using Plaintiff's materials, timeline, structure, and narrative—without permission, credit, or compensation.

15. Defendant Fabio Cesnik, who facilitated the original introduction and legal agreements, later refused to act on the Plaintiff's behalf, revealing that his firm had taken ESPN as a client in Brazil. He thereby allowed the misappropriation to continue while profiting from both sides of the dispute.

16. Defendant 30West deliberately blocked Plaintiff's emails and communications, indicating actual knowledge of the dispute and a conscious decision to avoid legal accountability while continuing to profit from the sale of rights it knew or should have known were obtained unlawfully.

17. Plaintiff seeks damages, declaratory judgment invalidating any waiver signed under false pretenses, injunctive relief halting further exploitation, and a permanent record of Defendants' fraud, conspiracy, copyright infringement, and racketeering conduct under civil RICO.

18. Defendants acted knowingly, willfully, and maliciously, with the singular goal of profiting from Plaintiff's 20 years of original work, research, and exclusive intellectual property. Their coordinated conduct—spanning emails, deceptive waivers, unauthorized use of copyrighted material, and betrayal of fiduciary duty—forms a pattern of racketeering activity. Each act served a unified objective: to strip the Plaintiff of ownership and exploit his work commercially, while excluding him entirely. This infringement was not merely negligent or mistaken — it was undertaken with full awareness of Plaintiff's legal rights and in conscious disregard of them, profiting from Plaintiff's 20 years of original work, research, and exclusive intellectual property. Their coordinated conduct — spanning emails, deceptive waivers, unauthorized use of copyrighted material, and betrayal of fiduciary duty — forms a pattern of racketeering activity. Each act served a unified objective: to strip the Plaintiff of ownership and exploit his work commercially, while excluding him entirely.

19. The enterprise, comprising ESPN, Solaris, O'Connor, Dettro, Jenna Anthony, Fabio Cesnik, and 30West, operated interdependently, each providing critical support to the scheme: legal cover,

industry access, content extraction, distribution, and sales. This was not a misunderstanding, but a calculated, multi-party strategy designed to benefit large institutions at the cost of an individual artist.

## IV. STATEMENT OF FACTS

20. In 2002, Plaintiff Victor Cesar Bota began development of a documentary project centered on the Gracie family, founders of Brazilian Jiu-Jitsu and the UFC. He conducted extensive historical research, including interviews and archival restoration, as well as the acquisition and digital restoration of hundreds of hours of rare footage and original materials from the family's personal collections.

21. Between 2003 and 2009, the Plaintiff filmed exclusive interviews abroad, conducted research, and worked with 21 members of the Gracie family. He secured written releases and contracts granting him rights to depict, distribute, and develop derivative works from both living and deceased family members. Among those granting rights were the estates of prominent deceased figures in the martial arts world.

22. In 2009, Plaintiff completed and released the documentary film "The Gracies and the Birth of Vale Tudo," which was broadcast on Rede Globo in Brazil and made available via Amazon and Budo Videos in the U.S. The film received critical acclaim and generated ongoing interest in expanding the story into a serialized format.

23. From 2010 to 2015, Plaintiff continued developing a long-form television or streaming miniseries based on the original documentary. He compiled treatment documents, episode outlines, updated interviews, and new footage, refining the concept into a scripted and documentary hybrid.

24. In 2016, Defendant Fabio Cesnik, acting as Plaintiff's legal counsel, introduced Plaintiff to Gregory O'Connor, a producer at Solaris Entertainment. Cesnik not only facilitated the introduction but also actively negotiated the framework of the Plaintiff's agreement with O'Connor and oversaw communications regarding potential production partnerships. Cesnik was integral in establishing the legal foundation upon which access to Plaintiff's materials was granted.

25. In 2016, ESPN executives, including Timothy Dettro and Jenna Anthony, communicated internally and with O'Connor about acquiring the project. Before Plaintiff was informed or engaged, ESPN requested a waiver under the false pretense that Plaintiff's submission was unsolicited. This occurred after ESPN had already solicited the materials via O'Connor.

26. In 2017, the Plaintiff and O'Connor executed a short-term shopping agreement. As part of the process, O'Connor shared the documentary and proposal with various industry contacts, including representatives at ESPN and IFC. The agreement required mutual participation in decision-making and limited O'Connor's rights strictly to shopping the project within the specified term.

27. That agreement expired in 2018 without being renewed. O'Connor failed to produce results or secure a production partner during the term. Despite this, he continued to use the Plaintiff's materials, pitch deck, and vision without permission, misrepresenting his authority to potential buyers and collaborators.

28. Plaintiff, unaware of the prior communications, signed a waiver in good faith, believing it was a standard pre-review form. At no time was Plaintiff informed that ESPN had been working with O'Connor or internally developing a project based on his documentary. In fact, prior to this waiver, Gregory O'Connor had already delivered a finished DVD of the documentary to ESPN executives, actively soliciting Plaintiff's material. The waiver was thus fraudulently induced and

executed under materially false circumstances — not only because ESPN had already reviewed the content, but because they had done so through a channel (O'Connor) that had no remaining rights or authority. ESPN's internal responses following the waiver made clear that they considered the material already complete and ready for exploitation, further demonstrating that the waiver's only purpose was to create legal cover for what they had already taken. This renders the waiver not just voidable, but emblematic of a deeper scheme to obtain rights under false pretenses, while removing the rightful creator from credit, control, and compensation.

29. Plaintiff, unaware of the ongoing internal discussions between ESPN and O'Connor, signed the waiver in good faith at the recommendation of Fabio Cesnik, who had continued to advise Plaintiff throughout these interactions. Cesnik failed to disclose any conflict or provide material warnings, despite having negotiated prior agreements involving the same parties and having knowledge that ESPN's request was not truly unsolicited.

30. Internal ESPN emails, obtained by Plaintiff, confirm that discussions regarding narration changes and content reformatting were already taking place before the waiver was signed, showing premeditation and intent to remove Plaintiff from his project.

31. The waiver was thus fraudulently induced and executed under materially false circumstances. Not only had ESPN already reviewed the content, but they had done so through a channel (O'Connor) that had no remaining rights or authority. ESPN's internal responses following the waiver made clear that they considered the material already complete and ready for exploitation. This confirms that the waiver's only purpose was to create legal cover for actions already taken.

32. In 2020 and 2021, despite receiving Plaintiff's cease-and-desist notifications, O'Connor, Solaris, and ESPN continued development of a Gracie family project mirroring Plaintiff's work, including similar structure, footage references, and narrative. They presented this reworked version as an "original" ESPN project.

33. When Plaintiff sought Cesnik's help after uncovering ESPN's exploitation of his project, Cesnik declined to intervene, citing his firm's concurrent representation of ESPN in Brazil. This conflict had not been previously disclosed. Cesnik's refusal to act—after years of representation, negotiation, and facilitation—amounted to a knowing breach of trust. His silence materially aided Defendants in continuing the unlawful use of Plaintiff's content.

34. In late 2022 and early 2023, Plaintiff attempted to contact 30West Media Group, which had become the sales agent for the misappropriated project. Upon receiving Plaintiff's legal communication, 30West blocked his email address, demonstrating active knowledge of the underlying legal issues and a willful decision to avoid accountability.

35. As of the filing of this complaint, Defendants continue to exploit Plaintiff's concept, research, and intellectual property without attribution or compensation. Their coordinated behavior reflects a knowing, ongoing effort to benefit from a fraudulently obtained creative work while excluding its rightful creator.

36. The Plaintiff has suffered irreparable harm, including loss of income, reputational damage, and the deprivation of control over a project he spent two decades building. These injuries include not only substantial economic losses from missed licensing and production opportunities, but also long-term damage to Plaintiff's professional standing in the entertainment industry.

## V. CLAIMS FOR RELIEF

COUNT ONE – COPYRIGHT INFRINGEMENT (17 U.S.C. § 501)

37. The Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

38. The Plaintiff has suffered and continues to suffer irreparable harm as a result of the Defendants' unauthorized use and distribution of his protected work. This harm includes loss of professional credibility, erosion of industry relationships, and deprivation of artistic control, none of which can be fully remedied through monetary damages alone. The reputational damage and harm to Plaintiff's long-term career prospects in the entertainment industry are severe and ongoing. Accordingly, injunctive relief is necessary to prevent further exploitation and restore the Plaintiff's ownership and control.

39. The Defendants O'Connor, Solaris, ESPN, Dettro, Anthony, 30West, and other Defendants named herein used Plaintiff's copyrighted documentary materials, structure, treatment, and exclusive interviews in developing and producing a derivative work without permission.

40. The Plaintiff is the exclusive owner of the documentary "The Gracies and the Birth of Vale Tudo," as well as all derivative works, underlying research, footage, scripts, outlines, and treatments.

41. The Defendants, without Plaintiff's authorization, have copied, reproduced, distributed, performed, displayed, and created unauthorized derivative works based on Plaintiff's copyrighted material.

42. This infringement was willful and deliberate, occurring after Plaintiff repeatedly informed Defendants of his exclusive rights, including through cease-and-desist communications.

43. As a result of Defendants' actions, Plaintiff has suffered economic losses and reputational harm and is entitled to damages, including statutory damages under 17 U.S.C. § 504, as well as injunctive and equitable relief. Under 17 U.S.C. § 106, the Plaintiff holds exclusive rights to reproduce, distribute, and create derivative works. As reaffirmed in Feist Publications, Inc. v. Rural Telephone Service Co., 499 U.S. 340 (1991), these rights attach to the original expression embodied in Plaintiff's work. Defendants' actions constitute a clear infringement of those rights,

which were fully vested at all relevant times. The Defendants' actions constitute a clear infringement of those rights.

44. Defendants' conduct constitutes willful copyright infringement under the Copyright Act of 1976, 17 U.S.C. §§ 101 et seq.

45. The Plaintiff is entitled to statutory damages, actual damages, and profits, as well as injunctive relief prohibiting further infringement.

COUNT TWO – FRAUD AND FRAUDULENT INDUCEMENT

46. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

47. The Plaintiff has metadata, email delivery logs, and digital headers that confirm Defendants' prior review and access of Plaintiff's materials before the waiver was ever signed. These digital footprints support Plaintiff's allegations that the waiver was not an innocent pre-review form but rather a fraudulent mechanism for legal cover after ESPN and its collaborators had already solicited and processed Plaintiff's copyrighted content. This forensic evidence will further demonstrate the knowing and willful nature of the Defendants' fraudulent actions.

48. The Defendants knowingly and falsely represented the nature of the waiver requested by ESPN, claiming it was for unsolicited material when, in fact, they had already solicited Plaintiff's materials through O'Connor.

49. These misrepresentations were made to induce Plaintiff to relinquish his rights and allow ESPN to exploit his work without compensation or attribution.

50. The waiver was induced by false representations and omissions, including the false statement that Plaintiff's submission was unsolicited.

51. Defendants knowingly and intentionally misled Plaintiff to obtain legal cover for the unauthorized use of his work.

52. Plaintiff reasonably relied on these false representations to his detriment.

53. As a direct and proximate result, Plaintiff has suffered damages including loss of control over his creative work, financial harm, and reputational injury. Courts have held that waivers and releases procured through misrepresentation may be voided. See Universal City Studios, Inc. v. Nintendo Co., 797 F.2d 70 (2d Cir. 1986); Rosenfeld v. Basquiat, 78 A.D.3d 482 (1st Dep't 2010)., The Plaintiff has suffered damages, including loss of control over his creative work, financial harm, and reputational injury.

54. As a direct result, Plaintiff suffered economic and reputational harm.

COUNT THREE – CIVIL CONSPIRACY

55. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

56. The Defendants knowingly agreed to misappropriate, distribute, and profit from Plaintiff's copyrighted works.

57. Each Defendant played an essential role in advancing the scheme: O'Connor in presenting the materials, ESPN in producing and distributing, Cesnik in facilitating and then withdrawing representation, and 30West in marketing the stolen project.

58. This coordinated effort constitutes a civil conspiracy to defraud and injure the Plaintiff. The coordination among Defendants, as evidenced by internal communications and email trails, satisfies the elements of civil conspiracy as described in Kashi v. Gratsos, 790 F.2d 1050 (2d Cir. 1986), constitutes a civil conspiracy to defraud and injure the Plaintiff.

59. The Plaintiff has suffered damages as a result of this conspiracy and seeks full recovery.

COUNT FOUR – CIVIL RICO (18 U.S.C. § 1962(c) and (d))

60. The Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

61. The enterprise includes not only Defendants Gregory O'Connor, Solaris Entertainment, ESPN, Dettro, Anthony, Cesnik, and 30West, but also individuals formerly affiliated with Creative Artists Agency (CAA), including Nick Lafferty and Micah Green. Lafferty acted in a fiduciary capacity while concealing material facts and coordinating communications with O'Connor outside Plaintiff's knowledge. Micah Green co-founded 30West after CAA's prior involvement in negotiations, and the firm received billion-dollar backing shortly thereafter to take over sales and distribution of the misappropriated project. Both Lafferty's and Green's roles reflect insider access, concealment, and orchestration, aligning with a broader pattern of racketeering behavior involving email fraud, unlawful solicitation, document misrepresentation, and systematic exclusion of the Plaintiff from his rightful ownership. Their immediate efforts to block Plaintiff's outreach further support the allegation of a knowing, coordinated enterprise.

62. The Defendants engaged in a pattern of racketeering activity involving at least two predicate acts of mail and wire fraud, including interstate emails, falsified representations, and fraudulent acquisition and use of Plaintiff's copyrighted content.

63. The Defendants operated as an enterprise, utilizing industry networks, legal cover, and sales agencies to carry out a fraudulent scheme aimed at depriving the Plaintiff of control and profit from his intellectual property.

64. The Defendants' actions affected interstate commerce and were designed to conceal their conduct from the Plaintiff and from legal liability.

65. As a direct result of the Defendants' racketeering activity, Plaintiff suffered injury to business and property.

66. The Plaintiff seeks treble damages, attorneys' fees, and costs under 18 U.S.C. § 1964(c). Defendants' conduct satisfies the pattern requirement for civil RICO liability under Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479 (1985), and constitutes actionable injury to business and property as outlined in Ideal Steel Supply Corp. v. Anza, 652 F.3d 310 (2d Cir. 2011).

COUNT FIVE – BREACH OF FIDUCIARY DUTY (Against Fabio Cesnik)

67. The Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

68. Defendant Fabio Cesnik served in an advisory and representative role for Plaintiff over many years and owed Plaintiff fiduciary duties of loyalty, good faith, and confidentiality.

69. Cesnik breached those duties by assisting adverse parties, concealing his ongoing representation of ESPN, and failing to protect Plaintiff's interests once the conflict emerged.

70. This breach facilitated the unlawful use of Plaintiff's materials and constituted a betrayal of professional trust and ethical standards.

71. The Plaintiff seeks compensatory and punitive damages against Defendant Cesnik. Under Matter of Cooperman, 83 N.Y.2d 465 (1994), and Birnbaum v. Birnbaum, 73 N.Y.2d 461 (1989), an attorney who places conflicting interests or higher-paying clients above existing fiduciary obligations breaches a fundamental duty of loyalty and care against Defendant Cesnik.

COUNT SIX – DECLARATORY JUDGMENT (Invalidating Waiver)

72. The Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

73. The waiver the Plaintiff signed in favor of ESPN was fraudulently induced, obtained under false pretenses, and executed without knowledge of ongoing discussions between Defendants.

74. The Plaintiff seeks a declaration that the waiver is null, void, and without legal effect.

75. Such a declaration is necessary to prevent further injury and remove any barriers to the Plaintiff's rightful enforcement of his intellectual property rights. Furthermore, Defendants are equitably estopped from asserting any defense based on waiver, consent, or abandonment because such defenses would arise from their fraud and misconduct. As the Second Circuit held in Lucente v. Int'l Bus. Machs. Corp., 310 F.3d 243 (2d Cir. 2002), waivers procured by misrepresentation or coercion are void as a matter of law to prevent further injury and remove any barriers to Plaintiff's rightful enforcement of his intellectual property rights.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendants, jointly and severally, as follows:

A. A declaration that Plaintiff is the exclusive owner of the documentary "The Gracies and the Birth of Vale Tudo" and all related materials and derivatives;

B. A declaration that the waiver Plaintiff signed in favor of ESPN is null and void due to fraudulent inducement;

C. A preliminary and permanent injunction enjoining Defendants and all persons acting in concert with them from distributing, exhibiting, selling, licensing, marketing, or otherwise exploiting the documentary project derived from Plaintiff's work;

D. An order directing Defendants to provide a full accounting of all revenues generated from any use of Plaintiff's materials and to disgorge all profits earned therefrom;

E. Statutory damages and/or actual damages pursuant to 17 U.S.C. § 504 for copyright infringement;

F. Treble damages pursuant to 18 U.S.C. § 1964(c) for civil RICO violations;

G. Compensatory and punitive damages for fraud, breach of fiduciary duty, and conspiracy;

H. Attorneys' fees, expert witness fees, costs of suit, and pre- and post-judgment interest as permitted by law

I. An order requiring public correction and attribution of authorship in any continued exploitation of the Plaintiff's intellectual property, including streaming, broadcasting, licensing, or derivative productions, and crediting the Plaintiff as the originator and sole owner of the source materials;

J. All forms of relief available under law and equity, including but not limited to statutory, compensatory, special, consequential, and punitive damages, restitution, disgorgement of profits, equitable relief, and declaratory and injunctive remedies;

K. An order requiring Defendants to credit Plaintiff as the originator and sole owner in any future use of the project materials.

L. Such other and further relief as the Court deems just and proper.

## ADDITIONAL CONTEXT

76. The outcome of this case will have far-reaching implications beyond the Plaintiff's circumstances. If Defendants' actions are allowed to stand — knowingly misappropriating copyrighted material, inducing waivers under false pretenses, exploiting fiduciary conflicts, and coordinating corporate silence to profit from stolen creative work — it will send a chilling message throughout the entertainment industry.

77. This case is about more than damages or a single project. It is about preserving the integrity of intellectual property, protecting independent creators from coordinated exploitation, and preventing powerful media entities from rewriting history to enrich themselves at the expense of those who built the foundation.

78. The Defendants' deliberate and well-funded efforts to strip Plaintiff of authorship — even paying off legal representation, blocking communication, and obfuscating responsibility — reflect not only malicious intent but a dangerous precedent.

79. If unchecked, their conduct will encourage systemic abuse of creators' rights, allowing major corporations to manipulate industry access, legal representation, and distribution platforms to override rightful ownership. This Court must send a message: that no enterprise is above the law, that creative theft will not be sanctioned by silence, and that independent voices — regardless of financial power — will be protected and vindicated in a court of justice. The outcome of this case will reverberate through boardrooms, agencies, and courtrooms, and the precedent it sets will shape whether innovation belongs to those who create or those who co-opt. Public policy supports vigorous enforcement of intellectual property rights as a check against exploitation, deception, and conflicts of interest that distort fair market participation, will encourage systemic

abuse of creators' rights, allowing major corporations to manipulate industry access, legal representation, and distribution platforms to override rightful ownership. This Court must send a message: that no enterprise is above the law, that creative theft will not be sanctioned by silence, and that independent voices — regardless of financial power — will be protected and vindicated in a court of justice. The outcome of this case will reverberate through boardrooms, agencies, and courtrooms, and the precedent it sets will shape whether innovation belongs to those who create.

## VII. VERIFICATION

I, Victor Cesar Bota, being duly sworn, depose and say:

I am the Plaintiff in the above-captioned action. I have read the foregoing Verified Complaint and know the contents thereof. The same is true to my knowledge, except as to matters stated upon information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on 05/23/2025 at Montclair, New Jersey.

_____
Victor Cesar Bota
65 N Fullerton Ave #21
Montclair, NJ 07042
Email: victorcesarbota@gmail.com